## GULF, COLORADO & SANTA FE RAILWAY COMPANY v. P. J. LOONIE.

### No. 3140.

1. **Bill of Lading—Penalty for Overcharge.**—Suit for statutory penalty for withholding freight and overcharge. The bill of lading contained the clause, "Weight and classification subject to correction." *Held*, to entitle plaintiff to recover the penalty for overcharge he should have alleged and proved that the weight, etc., in bill of lading was correct, so as to negative the correctness of the demand for freight in excess of that named in the bill of lading.

2. **Damages for Improperly Withholding Freight.**—As expenses naturally contemplated in the shipment of goods should be included that of the consignee providing means for receiving the freight and taking it to his place of business. Expense of wagons and teams sent for freight and not delivered is properly included in damages, if the freight be unlawfully withheld; but it seems that expenses of but one journey by the wagons and teams to the depot of delivery should be allowed.

APPEAL from Dallas. Tried below before Hon. R. E. BURKE. No statement is necessary.

*Alexander & Clark* and *J. W. Terry*, for appellant.—1. If the Act of May 6, 1882, Seventeenth Legislature, special session, page 35, be intended to apply to interstate shipments, then it is a regulation of interstate commerce, of the freight to be charged on interstate shipments, and is an impediment to the free movement of commerce between Texas and the other States and countries. It affects directly articles of commerce, and is not a regulation of the instrumentalities of commerce only situated wholly within the State, and in so far as it affects interstate shipments it is inoperative and void.

2. If the State of Texas ever had any authority to legislate upon the subject, its legislation has been abrogated and repealed by the Act of Congress known as the interstate commerce bill, of February, 4, 1887,

entitled, "An Act to regulate commerce." The States might have had to some extent the power to pass laws affecting interstate commerce prior to and in the absence of any action of Congress, but since Congress legislated upon the subject the State laws are thereby superseded and annulled. Railway v. Illinois, 118 U. S., 558; Hall v. De Cuir, 95 U. S., 485; County of Mobile v. Kimball, 102 U. S., 618; Fargo v. Stevens, 121 U. S., 230; Pickard v. Pullman Co., 117 U. S., 34; State Freight Tax, 15 Wall., 281; Ferry Co. v. Pennsylvania, 114 U S , 196; Act of Congress of February 4, 1887, entitled, "An Act to regulate commerce."

3. If the shipping contract or bill of lading was in fact made for the benefit of appellant, but without prior authority, appellant might make it its own by ratification, and thereby become liable thereon. But ratification can not be presumed against appellant from the fact that it received the cars from another railway company, hauled them to their destination, and received its proportionate part of the freight charges collected. Dwyer v. Railway, 69 Texas, 707; Railway v. Baird, 75 Texas, 256.

4. The item of $250 constitutes special damage such as would not ordinarily be the natural and direct consequence of the alleged delay, and such as could not reasonably be considered as having been within the contemplation of the parties at the time of making the contract of shipment, and the appellee was not therefore entitled to recover such damages unless at the time of making the contract of shipment appellant was given notice of the facts which would reasonably make it probable that delay in performing the contract of carriage would result in such damages to appellee. Without alleging such notice, or showing knowledge on the part of appellee, no cause of action for such damages was established. Ligon v. Railway, 3 Ct. App. C. C., sec. 1; Hutch. on Carr., sec. 776; 1 Suth. on Dam., 84, 85; Field on Dam., secs. 375–388.

*Leake, Shepard & Miller,* for appellee.—1. The interstate commerce act of Congress does not, either directly or indirectly, make any provision concerning the matter regulated by the statute of Texas under which this action was instituted.

2. The statute of Texas is not a regulation of interstate commerce, but a simple exercise of police power of the State, regulating the performance of a contract and providing a remedy for a breach thereof. Sayles' Civ. Stats., art. 4828a; Dwyer v. Railway, 69 Texas, 707; Railway v. Hannaford, 30 Am. and Eng. Ry. Cases, 67; Railway v. Fuller, 17 Wall., 560; Sherlock v. Allig, 93 U. S., 99; Smith v. Alabama, 124 U. S., 463, 476, 481; Railway v. Alabama, 128 U. S., 96; Railway v. Husen, 95 U. S., 465, 472; Coal Co. v. Railway, 26 Am. and Eng. Ry. Cases, 42.

GARRETT, PRESIDING JUDGE, *Section B.*—This was an action for damages, brought by the appellee to recover the penalty prescribed by statute for an overcharge on a carload of wire and staples transported from St. Louis, Missouri, to Meridian, Texas, and for delay and loss of wages of plaintiff's employes and the employment of his teams while waiting for the delivery of said freight, which had been withheld for the alleged overcharge.

The car of wire and staples was delivered to the Missouri Pacific Company at St. Louis for shipment to Meridian, Texas, to the Moroney Hardware Company, and a bill of lading was executed therefor, which was indorsed and transferred to the plaintiff. When delivered, the freight was weighed by the Missouri Pacific Company, and weighed 20,750 pounds. The traffic rate from St. Louis to Meridian was 56 cents on the 100 pounds, and the charges amounted to $116.20, and were prepaid. The bill of lading was in the usual form, and contained the following:

"Consigned to order Moroney H. Co., at Meridian, Texas.

"Weight and classification subject to correction.

"Marked and numbered on margin as follows: Rates guaranteed to Meridian, Texas. Paid $116.20. List of articles: 185 reels of barbed wire, 3 kegs of staples. Weight * * * Car No. 1210. Mo. Pac."

In course of transit the car was delivered by the Missouri Pacific Company to the defendant at Fort Worth, Texas, and by it carried to Meridian, the place of its destination, where the plaintiff was notified of its arrival. It was way-billed from Fort Worth to Meridian by the defendant's agent at Fort Worth at the weight of 21,800 pounds, with a memorandum showing charges, "Gulf, Colorado & Santa Fe, prepaid, $29.00; Gulf, Colorado & Santa Fe, unpaid, $5.88." The latter amount is the difference between the computations of the charges at the rate mentioned in the bill of lading upon the different weights, and is the amount claimed by the defendant's agent at Meridian, who refused to deliver the wire to plaintiff unless it was paid. It was that much in excess of the amount mentioned in the bill of lading as having been prepaid, and due on the weight as ascertained at the time the bill of lading was executed. Plaintiff refused to pay the additional charges and demanded the wire, which was withheld for sixteen days and then delivered to him without further payment.

Appellant has set up as a defense to the plaintiff's action, that the shipment was an interstate shipment, and that the State statute under which the penalty is sought to be recovered does not apply to such shipments, and as to them is inoperative and void. This is a question of considerable difficulty, having arisen since the passage of the interstate commerce act by Congress, and not coming within the decision in Railway v. Dwyer, 75 Texas, 572, which arose before that law was

passed.   But we do not think that a decision of the question is necessary to the disposition of the case.

The bill of lading under which the wire was shipped contained the stipulation that weight was subject to correction, which deprived it of its conclusiveness or finality as to the sum to be paid.   In the case of Railway v. Cruse, 83 Texas, 460, the court, holding that in view of this provision in the bill of lading the burden of proof rested on the plaintiff to show by other evidence that an overcharge was made, said: "There was no proof as to the weight of the animals; and if the petition had been sufficient, the court was not authorized to render a judgment in favor of plaintiff, on whom rested the burden of proof, without evidence showing that an overcharge was made, and the bill of lading, in view of the reservation of the right to correct weights and of the acts of the parties, could not be deemed sufficient evidence on this point."

Suing as he does for a penalty, the plaintiff should have averred in his petition that the freight specified in the bill of lading was upon the actual weight of the wire and staples, and the burden of proof rested upon him to show that it was.   There is no such averment in the petition, and there is no proof that the freight mentioned in the bill of lading was estimated upon the actual weight.   In the absence of such proof the court should not have rendered judgment against the defendant; and upon authority of Railway v. Cruse, supra, we are constrained to reverse the judgment of the court below.

There is sufficient evidence in the record to support the finding of the court complained of in the sixth assignment of error, that the defendant received the freight from the Missouri Pacific Company at Fort Worth as a connecting carrier in order to complete the transportation for its proportionate part of the freight.

Appellant's second and fourth assignments of error are:

"2.   The court erred in overruling defendant's first special exception to plaintiff's petition, which exception is as follows, to-wit: 'The defendant excepts to that portion of plaintiff's petition which seeks to recover $250 damages for delay and loss of wages of employes and the occupation of his teams.'   Because the petition fails to show that notice was given when the freight was shipped that said damage would result from delay.

"4.   The court erred in allowing plaintiff's witness J. C. Foley to testify, over defendant's objection, that plaintiff's teams (two mules and wagon and driver each) made three trips to Meridian for plaintiff's wire; that on one trip there were three teams, and on two trips there were four teams; that each trip consumed a day; that the defendant refused to deliver the freight on each of said trips; that each team was worth $3 per day.   Because said damage, if any, can not reasonably be considered as having been within the contemplation of the par-

ties at the time of making the contract of shipment, and plaintiff is not entitled to recover therefor, having given no notice to the railway company that delay would result in such damage to him.''

It was not necessary that notice of the probable damages that plaintiff charged in his petition to have resulted from the loss of the wages of employes and the use of his teams should have been given to the defendant when the contract of shipment was made, because a trip to the defendant's depot at Meridian for the wire was reasonably within the contemplation of the parties, and any loss or damage occasioned by a futile trip, if the defendant was at fault in not delivering the wire, would naturally flow from its detention. But we are of the opinion, that if it should be shown that plaintiff is entitled to recover, he should not recover for more than one trip, because on the first trip the bill of lading did not authorize a delivery to him, as it had not been indorsed. One trip would have been necessarily made; and there were only three shown.

We conclude that the judgment of the court below should be reversed and the cause remanded for another trial.

*Reversed and remanded.*

Adopted March 25, 1892.


A motion for rehearing was refused at the Austin Term.